**Raymond ROSS, Petitioner**

v.

**UNEMPLOYMENT COMPENSATION BOARD OF REVIEW, Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Sept. 3, 2004.

Decided Nov. 19, 2004.

Robert W. Small, Abington, for petitioner.

Pam R. Jenoff, Philadelphia, for intervenor, The Vanguard Group, Inc.

BEFORE: COLINS, President Judge, and COHN JUBELIRER, Judge, and FLAHERTY, Senior Judge.

OPINION BY Senior Judge FLAHERTY.

Raymond Ross (Claimant) petitions for review of a decision of the Unemployment Compensation Board of Review (Board) which affirmed the decision of an Unemployment Compensation Referee (Referee) denying Claimant benefits pursuant to Section 402(e) of the Pennsylvania Unemployment Compensation Law (Law).[1] We reverse for the reasons set forth below.

Claimant started working for The Vanguard Group, Inc. (Vanguard) in 1993 as an Information Systems Engineer. When he was hired, Claimant signed an Employment Agreement which states, in relevant part, that:

> From this date until I leave Vanguard's employ, I shall keep Vanguard informed of all inventions, discoveries, developments, modifications, procedures, innovations, systems, programs, or designs (referred to collectively as "inventions and designs") made, conceived or reduced to practice by me, in whole or in part, alone or with others, which either result from any work I may do for, or at the request of Vanguard, or are related to Vanguard's present or contemplated activities, investigations, or obligations. Any such inventions and designs shall be the sole and exclusive property of Vanguard, assign to Vanguard all my right title, and interest in such inventions and designs.

(R.R. at 61a). On July 29, 2003, Vanguard terminated Claimant's employment. Claimant applied for unemployment compensation benefits and was granted bene-

---

**1.** Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended,* 43 P.S. § 802(e). Section 402(e) provides in pertinent part:

> An employee shall be ineligible for compensation for any week-

> (e) in which his unemployment is due to discharge or temporary suspension from work for willful misconduct connected with his work. . . .

fits by a UC Service Center. Vanguard appealed to the Referee. At the hearing, Claimant testified that he developed a computer program called the "JCL Generator" in 1996 during his free time at home. Claimant also stated that, in 1997, Vanguard started using the JCL Generator software. In 2001, Claimant raised the question of whether he or Vanguard had ownership rights to the software. The Referee made several Findings of Fact with regard to that dispute:

5. Subsequent to claimant's development of this JCL Generator, the claimant became engaged in a dispute with Vanguard, specifically, as to whether or not he had Intellectual Property rights in the JCL Generator software that he developed.

6. There has been no litigation in a court of competent jurisdiction relating to this Intellectual Property issue to date.

7. On July 28, 2003, the claimant was in a meeting with the employer, wherein he was directed to provide the employer the CD for the JCL software, as it was the employer's contention that this software was its property as a result of the employment agreement claimant signed in 1993; the claimant did so.

8. During this date, nevertheless, the claimant contended that he had certain Intellectual Property rights in this software; he and the employer disagreed on this point.

9. At that time, the claimant did not set up the software as password protected or otherwise physically prohibit a user, i.e. the company, from accessing and using this software.

10. At this same meeting, the claimant provided documentation to the employer, which would be sufficient to enable an IT person within the company's employ to access and utilize this software.

Nevertheless, within this same written documentation that claimant provided, he requested that the company refrain from accessing the contents of the software within the compact disk until this matter was: "properly adjudicated in a U.S. Court of Law."

11. Notably, on this disk wherein the software was contained the disk was entitled Intellectual Property Materials JCL Generator Utility create date July 28, 2003.

12. The end result of this meeting was that the employer indicated that even though there was not any physically engineered impairment to utilizing the software, the software was not acceptable in its current form given claimant's qualifications.

13. On July 29, 2003, yet another meeting was held between claimant and employer.

14. At this meeting which occurred on July 29th again, claimant provided a CD with the JCL Generator Utility which was entitled Intellectual Property Materials JCL Generator Utility create date July 28, 2003. Also within specific fields within this program it was indicated that this material was claimant's Intellectual Property; claimant registered his same concerns about his legal rights under Intellectual Property Law with respect to this software; claimant provided documentation to the employer and again it was not physically impaired via a password, protective device or other similar device to prohibit the employer from physically accessing the data. Nevertheless, within this same document, the claimant stated that he requested the company refrain from accessing the contents until the Intellectual Property matter was properly adjudicated in a Court of Law.

15. The result of the meeting on July 29th was that claimant's submission of the CD with the restrictions noted was considered unacceptable by the employer and not in accordance with their employment agreement. Subsequently, the claimant was separated from the employment.

The question before the Referee was whether Claimant committed willful misconduct. The Referee concluded that, although Claimant literally complied with Vanguard's request that he give it the software, Claimant's "conditions, restrictions and annotations set forth within the fields of the software impaired the employer's effective and unfettered utilization of the JCL software, as was its right under the employment agreement that the claimant signed and agreed to." Accordingly, the Referee found that Claimant's actions were detrimental to the corporate interest and thus his actions rose to the level of willful misconduct. Claimant appealed to the Board, which concluded that the Referee's Findings of Fact and legally correct application of the law were supported by the testimony and evidence. Accordingly, the Board affirmed the decision of the Referee.

■ Our scope of review in unemployment compensation cases is limited to determining whether constitutional rights were violated, whether errors of law were committed or whether findings of fact are supported by substantial evidence. *Sheets v. Unemployment Compensation Board of Review*, 708 A.2d 884 (Pa.Cmwlth.1998). "In unemployment compensation proceedings, the Board is the ultimate factfinder and is empowered to resolve conflicts in the evidence and to determine the credibility of witnesses. Findings made by the Board are conclusive and binding on appeal if the record, when examined as a whole, contains substantial evidence to support those findings." *Kelly v. Unemployment Compensation Board of Review*, 776 A.2d 331, 336 (Pa.Cmwlth.2001).

■ "Willful misconduct has been defined as the '(a) wanton and willful disregard for an employer's interests, (b) deliberate violation of an employer's rules, (c) disregard for standards of behavior which an employer can rightfully expect of an employee, or (d) negligence indicating an intentional disregard of the employer's interests or an employee's duties and obligations.' *Caterpillar, Inc. v. Unemployment Compensation Board of Review*, 550 Pa. 115, 123, 703 A.2d 452, 456 (1997)." *Graham v. Unemployment Compensation Bd. of Review*, 840 A.2d 1054, 1056–1057 (Pa.Cmwlth.2004). The employer has the burden of proving that an employee has engaged in willful misconduct. Whether or not an employee's actions rise to the level of "willful misconduct" is a question of law that is fully reviewable by this Court. *Burger v. Unemployment Compensation Board of Review*, 780 A.2d 731, 732 (Pa.Cmwlth.2001).

■ Claimant testified that he developed the JCL Generator software program during his free time at home. On this basis, Claimant believes that the JCL Generator is his intellectual property and not subject to the agreement he signed because it was not developed for or at the request of Vanguard. Despite his belief that the JCL Generator program belonged to him, Claimant nonetheless handed it over when asked to do so by Vanguard. The software was not impeded by a password protection or any other device. Rather, Claimant merely *requested* that Vanguard not use it until the dispute over the ownership of the software was adjudicated in a court of law. Because this was merely a request, Vanguard was free to disregard it. As such, the request did not impede Vanguard's use of the software.

Rather, it merely preserved Claimant's objection to the use of, in his view, his property by someone else. Although Vanguard obviously didn't agree with the course of action that Claimant chose to take, this does not mean that Claimant committed willful misconduct, as we do not believe that his actions constituted a wanton and willful disregard of Vanguard's interests, a deliberate violation of the Employment Agreement, a disregard for standards of behavior or negligence indicating an intentional disregard of Vanguard's interests or his duties and obligations. Rather than being "willful misconduct", Claimant's actions were more akin to a reasonable compromise that gave Vanguard the software but preserved his objections for use in possible future litigation. Because Claimant did turn over the JCL Generator software program to Vanguard when asked to do so and because his request did not impede Vanguard's use of that software, we must conclude that, as a matter of law, Claimant did not commit willful misconduct.

Accordingly, the order of the Board is reversed.

### ORDER

AND NOW, November 19, 2004, the order of the Unemployment Compensation Board of Review docketed at B–422630 and dated February 25, 2004 is hereby REVERSED.

DISSENTING OPINION BY Judge COHN JUBELIRER.

Respectfully, I dissent.

I disagree with the majority's finding that Employer could continue to utilize the computer program that Claimant created while he was an employee. The referee specifically found that "claimant's conditions, restrictions and annotations set forth within the fields of the software impaired the employer's effective and unfettered utilization of the JCL software." It is the province of the referee (whose findings were adopted by the Board) to make findings. Based upon this, the referee concluded that these restrictions violated Employer's rights under the agreement Claimant had signed. Given the referee's findings, I believe his legal conclusion is correct and, thus, would affirm the Board's order denying benefits.